UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIK TRANSPORTATION, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-CV-06543 |
| ) | |
| WILBURN HOLDING COMPANY, INC., d/b/a ) | |
| FREEBANDZ ENTERTAINMENT, ) | Honorable Matthew F. Kennelly |
| NAYVADIUS DeMUN CASH, f/k/a ) | |
| NAYVADIUS DeMUN WILBURN, ) | |
| MOHAMMED RAMADAN, SARI ABBOUD, ) | |
| SALXCO UAM LLC, d/b/a UNIVERSAL ) | |
| ARABIC MUSIC. ) | |
| ) | |
| Defendants. ) | |

## SECOND AMENDED COMPLAINT FOR DAMAGES

NOW COMES Plaintiff, MIK TRANSPORTATION, INC., by and through its counsel TRIVEDI & KHAN, P.C., and for its Second Amended Complaint for Damages, states as follows:

## PARTIES

1. MIK Transportation, Inc. is a Minnesota corporation with its principal place of business in Egan, Minnesota.

2. Defendant Nayvadius DeMun Cash, formerly known as Nayvadius DeMun Wilburn ("Cash" or "Future") is an individual residing in Miami, Florida. On information and belief, Cash's Miami, Florida residence is his true, fixed, and permanent home.

3. Defendant Wilburn Holding Company, Inc. ("Wilburn"), d/b/a Freebandz Entertainment is a Georgia corporation with its principal place of business in Stockbridge, Georgia.

4. Defendant Cash serves as Defendant Wilburn's CEO.

1

5. On information and belief, Defendant Wilburn owns the rights to all of Defendant Cash's music.

6. Defendant, SALXCO UAM LLC, d/b/a Universal Arabic Music ("UAM"), is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Encino, California.

7. Defendant Mohammed Ramadan ("Ramadan") is an individual residing in Cairo, Egypt. On information and belief, Ramadan's Cairo, Egypt residence is his true, fixed, and permanent home.

8. Defendant Sari Abboud ("Abboud") is an individual residing in Los Angeles, California, and on information and belief, Abboud's Los Angeles, California residence is his true, fixed, and permanent home.

9. Abboud is an employee and officer of Defendant UAM, with the title of "Head of A&R."

10. Abboud's responsibilities include the marketing of UAM artists, such as Ramadan.

11. Defendant UAM, owns the rights to all of Defendants Ramadan and Abboud's music, in particular the song "Arabi."

12. Beginning in 2021, with Ramadan's song "Gaw El Banat," Defendant UAM began to promote Defendant Ramadan as an artist under their labels, which included partnering with him to release music recorded by Ramadan and owned by UAM.

13. Defendant Ramadan, acting as an agent under the direction and control of UAM, and the supervision of Abboud, was responsible for securing footage to be used in music videos for the music recorded by Ramadan and owned by and UAM.

14. The purpose of the music videos for which Defendant Ramadan secured footage was the promotion of the music recorded by Ramadan, and owned by Defendant UAM, and as a source of revenue generation for Ramadan and UAM.

15. Defendant UAM receives revenue from Defendant Ramadan's music and music videos.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) as both parties are citizens of different states and the amount at issue is greater than $75,000.

17. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) as a substantial number of the events took place in this judicial district.

## FACTS COMMON TO ALL COUNTS

18. MIK Transportation is a company that created and developed a one-of-a-find vehicle called the "Limo-Jet."

19. MIK spent millions of dollars and hundreds of hours to develop the Limo-Jet.

20. The Limo-Jet is the only known automobile made out of a jet fuselage.

21. MIK registered the trademark for "Limo-Jet."

22. Due to its unique character, clients pay MIK to display the Limo-Jet at various industry shows.

23. MIK routinely receives five figure payments for rental of the Limo-Jet.

24. A clear prohibition against using photographs of the Limo-Jet is clearly displayed on Limo-Jet's website.

25. On April 27, 2023, Defendant Ramadan and his associates contacted MIK's agent to arrange to see the Limo-Jet, which was at the time located at Jidd Motors, in Des Plaines, Illinois.

26. On the same day, Defendant Ramadan and his associates discussed with MIK agents the possibility of using the Limo-Jet for various shows in California and Dubai.

27. They specifically stated that Defendant Cash, who performs music under the stage name "Future," was interested in using the Limo-Jet in his music videos.

28. The next day, April 28, 2023, Defendant Ramadan and his associates again contacted MIK for a more extensive session with the Limo-Jet.

29. UAM hired and paid for transportation and bodyguards to accompany its agent, Ramadan, to Jidd Motors to secure footage of the Limo Jet, and at all times relevant exercised control over his activities.

30. Ramadan, as an agent of UAM, told MIK's agent that they were interested in renting the Limo-Jet, but they needed to take some photographs and videos in order to show others that were not present.

31. Ramadan and UAM stated that they would be showing the videos to Defendant Future and his production company, Defendant Wilburn Holding Company, Inc.

32. Defendant Ramadan and his agents specifically agreed that they would not publish any videos or photographs without MIK's express consent.

33. Defendant Ramadan and his agents also agreed not to damage the vehicle.

34. Based on these assurances, MIK permitted Defendant Ramadan and his agents to take videos and pictures of the Limo-Jet.

35. This included videos inside and outside of the vehicle along with videos taken with an aerial view.

36. Soon thereafter, Defendant Ramadan and his agents left and told MIK that they would get back to them in short order about future business.

37. Through the course of the shooting, Defendant Ramadan and his agents damaged the Limo-Jet including badly scuffing the custom paintjob.

38. MIK waited to hear back from Defendant Ramadan and his agents, but no contact was made.

39. On about February 1, 2024, MIK discovered video footage of the Limo-Jet on You-Tube.

40. The video footage was part of a music video featuring Defendants Mohammad Ramadan, Nayvadius Cash, and Sari Abboud (also known by the stage name "Massari").

41. The video was for a song called "Arabi" where Defendants Ramadan, Cash, and Massari performed.

42. Specifically, the footage included the videos taken on April 27, 2023.

43. The YouTube video has been viewed over 53 million times.

44. Defendants Ramadan, Cash, and Abboud are major international pop stars with large followings on and off of social media.

45. Defendants UAM publicly held out Defendant Ramadan as an artist on their record labels from October 2021 through the release of the Song "Arabi."

46. MIK also discovered photographs of the Limo-Jet on Defendant Ramadan's social media.

47. On May 21, 2024, MIK sent the Defendants letters demanding compensation for the unauthorized use of the footage of their property.

48. Defendants did not respond.

**COUNT I – BREACH OF CONTRACT (RAMADAN)**

49. Plaintiff reincorporates and realleges the allegations of paragraphs 1-48 of this Complaint.

50. Defendant Ramadan entered into an oral agreement with MIK where MIK agreed to allow him to take video and photographs of the Limo-Jet in exchange for renting the Limo-Jet at a later date.

51. As part of this agreement, Defendant Ramadan agreed to not publicly disclose any of the video or photographs.

52. MIK fulfilled its obligations under the oral agreement.

53. Defendant Ramadan breached the agreement by publishing the videos on YouTube as part of the video for the song "Arabi."

54. Defendant Ramadan's actions caused damage to MIK.

## COUNT II – NEGLIGENCE (RAMADAN)

55. Plaintiff reincorporates and realleges the allegations of paragraphs 1-54 of this Complaint.

56. Defendant Ramadan owed MIK a duty to exercise ordinary care in his use of the Limo-Jet.

57. Defendant Ramadan breached this duty by damaging the Limo-Jet while, among other actions, dancing on the vehicle.

58. Defendant Ramadan's actions proximately caused damages to MIK, including but not limited to repair.

59. Defendant Ramadan's actions proximately caused damages to MIK by forcing MIK to forgo opportunities to rent out the Limo-Jet while it was under repair.

## COUNT III – COMMON LAW FRAUD (RAMADAN)

60. Plaintiff reincorporates and realleges the allegations of paragraphs 1-59 of this Complaint.

61. Defendant Ramadan and his agents made material misrepresentations to MIK's representatives.

6

62. These representations took place on April 28, 2023, at Jidd Motors in Des Plaines, IL.

63. The misrepresentations included Ramadan's statements that he intended to provide opportunities for MIK to rent the Limo-Jet in California and Dubai.

64. Ramadan knew these statements were false when he and his representatives made them.

65. The statements were intended to induce MIK to permit Ramadan to take extensive video of the Limo-Jet.

66. MIK relied on these statements when permitting Ramadan and his associates to take video and photographs of the Limo-Jet.

67. MIK's reliance on the statements was reasonable.

68. Defendant Ramadan's actions proximately caused damage to MIK.

## COUNT IV – MISAPPROPRIATION (RAMADAN)

69. Plaintiff reincorporates and realleges the allegations of paragraphs 1-68 of this Complaint.

70. MIK spent extensive time, money, skill, and labor to create the Limo-Jet.

71. The Limo-Jet is a unique vehicle.

72. MIK rents and showcases the Limo-Jet to customers across the United States.

73. Defendant Ramadan used the Limo-Jet without authorization from MIK.

74. Defendant Ramadan's use of the Limo-Jet unfairly took advantage of MIK's development of the Limo-Jet.

75. Defendant Ramadan's use of the Limo-Jet in a music video led to great commercial success for Defendant.

76. Defendant Ramadan's use of the Limo-Jet caused commercial damage to MIK by failing to compensate Limo-Jet for its use in the music video.

**COUNT V – BREACH OF CONTRACT (UAM)**

77. Plaintiff reincorporates and realleges the allegations of paragraphs 1-76 of this Complaint.

78. Defendant Ramadan entered into an agreement with MIK where MIK agreed to allow him to take video and photographs of the Limo-Jet in exchange for renting the Limo-Jet at a later date.

79. As part of this agreement, Defendant Ramadan agreed to not publicly disclose any of the video or photographs.

80. MIK fulfilled its obligations under the oral agreement.

81. Defendant Ramadan breached the agreement by publishing the videos on YouTube as part of the video for the song "Arabi."

82. Defendant Ramadan's actions caused damage to MIK.

83. Ramadan has an agency relationship with Defendant UAM with respect to the recording of music and the marketing of music owned by UAM and performed by Ramadan.

84. At the time of the Agreement between MIK and Ramadan, and all other times relevant, Ramadan was acting in his capacity as an agent of UAM.

85. At the time of the Agreement between MIK and Ramadan, and all other times relevant, Defendant UAM publicly held out Ramadan as an artist under its label. UAM also listed its name as the owner of "Arabi" on YouTube and Spotify.

86. UAM, through its officer and employee Sari Abboud, directed Ramadan to procure footage to be used in a music video for the song "Arabi."

87. Abboud was intimately involved in the recording and marketing of the song "Arabi" as both UAM's Head of A&R and a performer on said song.

8

88. UAM heavily promoted the music video for "Arabi" for the dual purpose of promoting the song "Arabi" and promoting UAM as a record label to American audiences.

89. Defendant UAM owns the rights to the song "Arabi" and Ramadan's work on the music video for "Arabi," including his efforts to obtain footage of the Limo-Jet, were undertaken on behalf of and under the control of UAM.

90. UAM was intimately involved in the process of obtaining footage for the music video for "Arabi," including procuring and paying for transportation and protection for Ramadan so that he could travel to Des Plaines, Illinois for the purpose of obtaining footage of the Limo Jet which was ultimately used in the music video.

91. Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions.

## COUNT VI – NEGLIGENCE (UAM)

92. Plaintiff reincorporates and realleges the allegations of paragraphs 1-91 of this Complaint.

93. Defendant Ramadan owed MIK a duty to exercise ordinary care in his use of the Limo-Jet.

94. Defendant Ramadan breached this duty by damaging the Limo-Jet while, among other actions, dancing on the vehicle.

95. Defendant Ramadan's actions proximately caused damages to MIK, including but not limited to repair.

96. Defendant Ramadan's actions proximately caused damages to MIK by forcing MIK to forgo opportunities to rent out the Limo-Jet while it was under repair.

97. On information and belief, Ramadan has an agency relationship with Defendant Universal Arabic Music with respect to artistic production.

98. At the time of Ramadan's negligent actions, and all other times relevant, Defendant UAM publicly held out Ramadan as an artist under its labels. UAM also listed its name as the owner of "Arabi" on YouTube and Spotify.

99. At the time of the Ramadan's negligent actions, Ramadan was acting in his capacity as an agent of UAM.

100. At all times relevant, Ramadan had been tasked by UAM, through its officer Abboud, to secure footage for the "Arabi" music video.

101. At all times Ramadan undertook this task, he was under the control of UAM and its officer, Abboud.

102. All footage secured by Ramadan, including the footage of the Limo-Jet, was ultimately approved by UAM.

103. Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions.

### COUNT VII – COMMON LAW FRAUD (UAM)

104. Plaintiff reincorporates and realleges the allegations of paragraphs 1-103 of this Complaint. Defendant Ramadan and his agents made material misrepresentations to MIK's representatives.

105. These representations took place on April 28, 2023, at Jidd Motors in Des Plaines, Illinois.

106. The misrepresentations included Ramadan's statements that he intended to provide opportunities for MIK to rent the Limo-Jet in California and Dubai.

107. Ramadan knew these statements were false when he and his representatives made them.

108. The statements were intended to induce MIK to permit Ramadan to take extensive video of the Limo-Jet.

109. MIK relied on these statements when permitting Ramadan and his associates to take video and photographs of the Limo-Jet.

110. MIK's reliance on the statements was reasonable.

111. Defendant Ramadan's actions proximately caused damage to MIK.

112. Ramadan has an agency relationship with Defendant Universal Arabic Music with respect to artistic production.

113. At the time of the Agreement between MIK and Ramadan, Ramadan was acting in his capacity as an agent of UAM.

114. At the time of the Agreement between MIK and Ramadan, and all other times relevant, Defendant UAM publicly held out Ramadan as an artist under its labels. UAM also listed its name as the owner of "Arabi" on YouTube and Spotify.

115. At all times relevant, Ramadan had been tasked by UAM to secure footage for the "Arabi" music video.

116. At all times Ramadan undertook this task, he was under the control of UAM and its officer, Abboud.

117. All footage secured by Ramadan, including the footage of the Limo-Jet, was ultimately approved by UAM.

118. Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions.

### COUNT VIII – MISAPPROPRIATION (UAM)

119. Plaintiff reincorporates and realleges the allegations of paragraphs 1-118 of this Complaint.

120. MIK spent extensive time, money, skill, and labor to create the Limo-Jet.

121. The Limo-Jet is a unique vehicle.

122. MIK rents and showcases the Limo-Jet to customers across the United States.

123. Defendant Ramadan used the Limo-Jet without authorization from MIK.

124. Defendant Ramadan's use of the Limo-Jet unfairly took advantage of MIK's development of the Limo-Jet.

125. Defendant Ramadan's use of the Limo-Jet in a music video led to great commercial success for Defendant.

126. Defendant Ramadan's use of the Limo-Jet caused commercial damage to MIK by failing to compensate Limo-Jet for its use in the music video.

127. On information and belief, Ramadan has an agency relationship with Defendant UAM with respect to artistic production.

128. At the time of the Agreement between MIK and Ramadan, Ramadan was acting in his capacity as an agent of UAM.

129. At all times relevant, Defendant UAM publicly held out Ramadan as an artist under its labels. UAM also listed its name as the owner of "Arabi" on YouTube and Spotify.

130. At all times relevant, Ramadan had been tasked by UAM, through its officer Abboud, to secure footage for the "Arabi" music video.

131. At all times Ramadan undertook this task, he was under the direction and control of UAM.

132. All footage secured by Ramadan, including the footage of the Limo-Jet, was ultimately approved by UAM.

133. Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions.

134. Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions.

135. UAM continues to profit from its misappropriation of MIK's Limo-Jet, which continues to accumulate views and revenue on YouTube.

### COUNT IX – MISAPPROPRIATION (CASH)

136. Plaintiff hereby reincorporates and realleges the allegations of paragraphs 1-135 of this Complaint.

137. MIK spent extensive time, money, skill, and labor to create the Limo-Jet.

138. The Limo-Jet is a unique vehicle.

139. MIK rents and showcases the Limo-Jet to customers across the United States.

140. Defendant Cash used the Limo-Jet without authorization from MIK.

141. Defendant Cash's use of the Limo-Jet unfairly took advantage of MIK's development of the Limo-Jet.

142. Defendant Cash's use of the Limo-Jet in a music video led to great commercial success for Defendant.

143. Defendant Cash's use of the Limo-Jet caused commercial damage to MIK by failing to compensate Limo-Jet for its use in the music video.

### COUNT X – MISAPPROPRIATION (WILBURN)

144. Plaintiff hereby reincorporates and realleges the allegations of paragraphs 1-143 of this Complaint.

145. MIK spent extensive time, money, skill, and labor to create the Limo-Jet.

146. The Limo-Jet is a unique vehicle.

147. MIK rents and showcases the Limo-Jet to customers across the United States.

148. Defendant Cash used the Limo-Jet without authorization from MIK.

149. Defendant Cash's use of the Limo-Jet unfairly took advantage of MIK's development of the Limo-Jet.

150. Defendant Cash's use of the Limo-Jet in a music video led to great commercial success for Defendant.

151. Defendant Cash's use of the Limo-Jet caused commercial damage to MIK by failing to compensate Limo-Jet for its use in the music video.

152. On information and belief, Cash has an agency relationship with Defendant Wilburn Holding Company, Inc. with respect to artistic production.

153. Defendant Cash is also the Chief Executive Officer of Defendant Wilburn Holding Company, Inc.

154. Cash was acting in his capacity as an agent and an officer of Defendant Wilburn Holding Company, Inc.

155. Defendant, Wilburn Holding Company, Inc., publicly holds out Cash as an artist under its labels.

156. Defendant, Wilburn Holding Company, Inc. is therefore vicariously liable to MIK for Cash's actions.

### COUNT XI – MISAPPROPRIATION (ABBOUD)

157. Plaintiff hereby reincorporates and realleges the allegations of paragraphs 1-156 of this Complaint.

158. MIK spent extensive time, money, skill, and labor to create the Limo-Jet.

159. The Limo-Jet is a unique vehicle.

160. MIK rents and showcases the Limo-Jet to customers across the United States.

161. Defendant Abboud used the Limo-Jet without authorization from MIK.

162. Defendant Abboud's use of the Limo-Jet unfairly took advantage of MIK's development of the Limo-Jet.

163. Defendant Abboud's use of the Limo-Jet in a music video led to great commercial success for Defendant.

164. Defendant Abboud's use of the Limo-Jet caused commercial damage to MIK by failing to compensate Limo-Jet for its use in the music video.

WHEREFORE, Plaintiff MIK TRANSPORTATION, INC. prays that this Honorable Court enter an order awarding damages in an amount exceeding $75,000 to be determined at trial, including compensatory damages, reasonable costs and attorney's fees, and granting other such relief as the Court deems just.

                                              Respectfully submitted,
                                              **MIK TRANSPORTATION, INC.**

                                              By: *s/ Zubair A. Khan*

Zubair A. Khan (6275265)                         One of its attorneys
Trivedi & Khan, P.C.
300 N. Martingale Rd, Suite 725
Schaumburg, IL 60173
Phone: (224)-353-6346
Email: service@trivedikhan.com

15