**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MIK TRANSPORTATION, INC., | |
| Plaintiff, | Case No. 24-cv-06543 |
| vs. | Honorable Matthew F. Kennelly |
| WILBURN HOLDING COMPANY, INC., d/b/a FREEBANDZ ENTERTAINMENT, NAYVADIUS DeMUN CASH, f/k/a NAYVADIUS DeMUN WILBURN, MOHAMMED RAMADAN, SARI ABBOUD, SALXCO UAM LLC, d/b/a UNIVERSAL ARABIC MUSIC. | |
| Defendants. | |

**DEFENDANT SALXCO UAM LLC'S MOTION TO DISMISS PURSUANT TO**

**FED. R. CIV. P. 12(B)(2) AND (6) AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

**Page**

1. INTRODUCTION ................................................................. 1

2. FACTUAL BACKGROUND .................................................. 2

3. PROCEDURAL BACKGROUND............................................ 2

ARGUMENT ............................................................................ 3

1. PLAINTIFF'S DENIAL THAT UAM PAID FOR THE USE OF THE LIMO-JET PRECLUDES PERSONAL JURISDICTION OVER UAM............................................. 3

    (a) The Rule 12(b)(2) Standards.................................................. 3

    (b) Plaintiff's Own Allegations Establish the Court Does Not Have General Jurisdiction over UAM ................................................. 4

    (c) Plaintiff Also Fails to Establish Specific Jurisdiction over UAM ......................... 4

2. ALTERNATIVELY, PLAINTIFF'S CLAIMS ALSO FAIL UNDER RULE 12(B)(6) ... 6

    (a) The Rule 12(b)(6) Standards.................................................. 6

    (b) All of Plaintiff's Claims Fail Because They Rely on Plaintiff's Conclusory and Implausible Agency Allegations.................................................. 7

    (c) Each of Plaintiff's Claims against UAM Fails for Additional Reasons ................. 8

        (1) Plaintiff's Count V for Alleged Breach of Contract .................................. 8

        (2) Plaintiff's Count VI for Negligence........................................... 9

        (3) Plaintiff's Count VII for Common Law Fraud ....................................... 10

        (4) Plaintiff's Count VIII for Misappropriation ........................................ 12

    (i) The Copyright Act's Test for Preemption ......................................... 12

    (ii) The Limo-Jet Is Fixed in Tangible Form and Comes Within the Subject Matter of Section 102 .................................................. 13

    (iii) The Misappropriation Claim Is Equivalent to the Rights Specified Under Section 106................................................. 14

CONCLUSION................................................................ 15

<u>**TABLE OF AUTHORITIES**</u>

<u>Page(s)</u>

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................7

*Ballas v. Tedesco*,
   41 F. Supp. 2d 531 (D.N.J. 1999) ................................................................5

*Baltimore Orioles v. Major League Baseball Players Ass'n*,
   805 F.2d 663 (7th Cir. 1986) ..............................................................12, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................7

*Bilek v. Fed. Ins. Co.*,
   8 F.4th 581 (7th Cir. 2021) ...........................................................................7

*Borsellino v. Goldman Sachs Grp., Inc.*,
   477 F.3d 502 (7th Cir. 2007) .......................................................................10

*Calder v. Jones*,
   465 U.S. 783 (1984)........................................................................................6

*Carter v. Pallante*,
   256 F. Supp. 3d 791 (N.D. Ill. 2017) ...................................................12, 14

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991).............................................................................8

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
   No. 17-CV-1216, 2018 WL 835222 (N.D. Ill. Feb. 13, 2018) ...................5

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)........................................................................................3

*Desnick v. Am. Broad. Co., Inc.*,
   44 F.3d 1345 (7th Cir. 1995) .......................................................................10

*Ellis v. Allstate Ins. Co.*,
   479 F. Supp. 2d 782 (N.D. Ill. 2006) ..........................................................10

*FASA Corp. v. Playmates Toys, Inc.*,
   869 F. Supp. 1334 (N.D. Ill. 1994) .............................................................12

*Felland v. Clifton*,
  682 F.3d 665 (7th Cir. 2011) ................................................................4

*Flynn v. Merrick*,
  881 F.2d 446 (7th Cir. 1989) ..............................................................11

*G.D. Searle & Co. v. Philips–Miller & Assocs., Inc.*,
  836 F. Supp. 520 (N.D.Ill.1993) .........................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ..............................................................................4

*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*,
  131 Ill.2d 145, 545 N.E.2d 672 (1989) ...............................................10

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ..............................................................................3

*Irwin v. Jimmy John's Franchise, LLC*,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016) ................................................10

*Kipp v. Ski Enter. Corp.*,
  783 F.3d 695 (7th Cir. 2015) ................................................................4

*Lachmund v. ADM Inv. Servs., Inc.*,
  191 F.3d 777 (7th Cir. 1999) ..............................................................11

*Matlin v. Spin Master Corp.*,
  921 F.3d 701 (7th Cir. 2019) ................................................................6

*Mold-A-Rama Inc. v. Collector-Concierge-Int'l*,
  451 F. Supp. 3d 881 (N.D. Ill. 2020) ...................................................3

*Moore v. Charter Commc'ns, Inc.*,
  523 F. Supp. 3d 1046 (N.D. Ill. 2020) ..............................................5, 6

*Moreno v. Samuels*,
  No. 17 C 1711, 2019 WL 7291063 (N.D. Ill. Dec. 30, 2019) ..............11

*Morningware, Inc. v. Hearthware Home Products, Inc.*,
  No 09 C 4348, 2012 WL 3835825 (N.D. Ill. Sept. 4, 2012) .................14

*N. Grain Mktg., LLC v. Greving*,
  743 F.3d 487 (7th Cir. 2014) ................................................................3

*Nash v. CBS, Inc.*,
  704 F. Supp. 823 (N.D. Ill. 1989), *aff'd*, 899 F.2d 1537 (7th Cir. 1990) ...............15

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*,
  910 F.3d 293 (7th Cir. 2018) ...................................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ..................................................................11

*ProCD, Inc. v. Zeidenberg*,
  86 F.3d 1447 (7th Cir. 1996) ..................................................................13

*Reuben v. U.S. Air*,
  2012 WL 2302156 (W.D. Pa. June 18, 2012)............................................8

*Roberts v. Wells Fargo AG Credit Corp.*,
  990 F.2d 1169 (10th Cir. 1993) ..............................................................11

*Rudy v. D.F. Stauffer Biscuit Co., Inc.*,
  666 F. Supp. 3d 706 (N.D. Ill. 2023) .....................................................10

*Salon Grp., Inc. v. Salberg*,
  156 F. Supp. 2d 872 (N.D. Ill. 2001) ........................................................5

*Sefton v. Toyota Motor Sales U.S.A.*,
  No. 09 C 3787, 2010 WL 1506709 (N.D. Ill. Apr. 14, 2010)....................8

*Seng-Tiong Ho v. Taflove*,
  648 F.3d 489 (7th Cir. 2011) ..................................................................13

*Shield Techs. Corp. v. Paradigm Positioning, LLC*,
  908 F. Supp. 2d 914 (N.D. Ill. 2012) ......................................................10

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  30 F. Supp. 3d 765 (N.D. Ill. 2014) .....................................................7, 8

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ................................................................3, 4

*Thompson v. Ill. Dept. of Professional Regulation*,
  300 F.3d 750 (7th Cir. 2002) ....................................................................9

*Turner v. GAC Star Quality, LLC*,
  671 F. Supp. 3d 897 (N.D. Ill. 2023) .......................................................9

*U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*,
  415 F.3d 601 (7th Cir. 2005) ..................................................................10

*United Airlines, Inc. v. Zaman*,
  152 F. Supp. 3d 1041 (N.D. Ill. 2015) .....................................................3

iv

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) ..................................................................7

*Walden v. Fiore*,
    571 U.S. 277 (2014)..............................................................................6

*Waldock v. M.J. Select Global, Ltd.*,
    No. 03 C 5293, 2005 WL 2737502 (N.D. Ill. Oct. 24, 2005) ..................5

*Wilson v. Nouvag GmbH*,
    No. 15-CV-11700, 2018 WL 1565602 (N.D. Ill. Mar. 30, 2018)............5

**State Cases**

*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*,
    131 Ill.2d 145, 545 N.E.2d 672 (1989) .................................................10

**Federal Statutes**

17 U.S.C.
    § 102...........................................................................................12, 13, 14
    § 106...............................................................................................12, 14
    § 301...............................................................................................12, 13

**State Statutes**

735 ILCS 5/2-209(c) ...........................................................................................3

**Rules**

Federal Rule of Civil Procedure
    9(b)......................................................................................................7, 10, 11
    12(b)(2) ...............................................................................................1, 3, 6
    12(b)(6) ..................................................................................... *passim*

**Other Authorities**

California Entertainment Commission (May 23, 1985) ....................................6

H. R. Rep. No. 94-1476 (1976)........................................................................12

H.W. KRASILOVSKY & SYDNEY SHEMEL, THIS BUSINESS OF MUSIC 185 (10th Ed. 2007).............5

1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 1.14[C] (2025) ......................................14

Defendant SALXCO UAM LLC ("UAM") respectfully moves pursuant to <u>Federal Rules of Civil Procedure 12(b)(2)</u> and <u>12(b)(6)</u> to dismiss plaintiff MIK Transportation, Inc.'s ("Plaintiff") claims against UAM in Plaintiff's Second Amended Complaint.

1.      **<u>INTRODUCTION</u>**

Although Plaintiff admits it has no copyright in its jet-shaped limousine, Plaintiff filed this action almost a year ago claiming that the recording artist defendant Mohammed Ramadan ("Ramadan") included the "limo-jet" in a music video. Now, in its Second Amended Complaint (<u>ECF No. 55</u>) (the "SAC"), Plaintiff adds UAM as a defendant but, as supposed support for doing so, Plaintiff filed with the Court proof that UAM paid a Chicago, Illinois, non-party, Nagham's Limo, to rent the Limo-Jet. *See* Plaintiff's Supp. to Motion to Amend (<u>ECF No. 53-1</u>) (the "Invoice and Confirmation of Payment"). Plaintiff only compounds the problems with its claims.

First, Plaintiff denies knowledge of Nagham's Limo and disputes that UAM's payment relates to the use of footage of the Limo-Jet in the music video. But if that is so, then UAM's payment does not—as Plaintiff claims—establish personal jurisdiction over UAM for the alleged claims. Plaintiff is instead left with conclusory allegations that the recording artist, Ramadan, is an agent of the record company, UAM. But conclusory allegations are insufficient to establish personal jurisdiction and, moreover, those allegations are not only implausible, they are untrue. Accordingly, UAM's <u>Rule 12(b)(2)</u> Motion should be granted.

Second, UAM's alternative <u>Rule 12(b)(6)</u> Motion is properly granted for multiple, independent reasons. For example, all of Plaintiff's claims against UAM are based on alleged vicarious liability improperly based on the same conclusory and implausible allegations that Ramadan is an agent of UAM. As another example, Plaintiff's claims fail if, to establish personal jurisdiction, Plaintiff now concedes that UAM did in fact pay for the rental of the Limo-Jet to film

1

it for the music video.  For these and other reasons, Plaintiff fails to state a claim against UAM and the Rule 12(b)(6) Motion should be granted.

## 2.   **FACTUAL BACKGROUND**

Plaintiff is a Minnesota corporation that allegedly created the Limo-Jet by turning a jet fuselage into a limousine.  SAC at ¶¶ 1, 18, 20.  Plaintiff alleges it spent "millions of dollars and hundreds of hours to develop the Limo-Jet."  Id. at ¶ 19.  Plaintiff also alleges that Ramadan arranged to view and film the Limo-Jet and then, without Plaintiff's consent, included the footage in a music video featuring Ramadan and including Abboud.  Id. at ¶¶ 25, 30, 32, 39-40.[1]

Plaintiff alleges that UAM "is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Encino, California."  SAC at ¶ 6.  Based on Plaintiff's allegations that Ramadan was acting as UAM's agent, Plaintiff asserts against UAM claims for vicarious liability for Ramadan's alleged breach of contract (Count V), negligence (Count VI), fraud (Count VII), and misappropriation (Count VIII).

## 3.   **PROCEDURAL BACKGROUND**

Plaintiff filed this action in July 2024, and filed the FAC in October 2024.  ECF Nos. 1, 20.  UAM was not named as a defendant in either of those complaints.  Id.  In December 2024, Plaintiff filed its first Motion for leave to file a second amended complaint, which the Court denied.  ECF Nos. 26, 34.  The Court then set March 28, 2025, as the deadline for Plaintiff to file any further motions to amend.  ECF No. 34.  Almost a month after that deadline, Plaintiff again moved the Court for leave to file a second amended complaint.  ECF No. 51.  The Court gave Plaintiff an opportunity to supplement that motion to explain why it should be heard.  ECF No. 52.

---

[1]      The music video, which includes fragmentary images of the Limo-Jet totaling less than ten seconds, can be viewed at Mohamed Ramadan, Future & Massari - ARABI (Official Music Video) - عربي

2

Plaintiff then filed the Invoice and Confirmation of Payment—which UAM's counsel had provided to Plaintiff in an attempt to resolve this dispute—showing that UAM had paid Nagham's Limo to rent the Limo-Jet. ECF No. 53-1. The Court granted Plaintiff leave to amend (ECF No. 57) and, after Plaintiff unsuccessfully attempted to serve UAM, UAM agreed to respond to the Second Amended Complaint by June 20, 2025. *See* ECF No. 62. This Motion timely followed.

## ARGUMENT

## 1. PLAINTIFF'S DENIAL THAT UAM PAID FOR THE USE OF THE LIMO-JET PRECLUDES PERSONAL JURISDICTION OVER UAM

### (a) The Rule 12(b)(2) Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). The plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). To establish personal jurisdiction over a defendant, a plaintiff must show (1) the state's long-arm statute authorizes the exercise of personal jurisdiction, and (2) exercising personal jurisdiction would comport with the Due Process Clause. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Illinois's "long-arm statute allows for the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F. Supp. 3d 881, 889 (N.D. Ill. 2020) (discussing 735 ILCS 5/2-209(c)). That requires that the defendant has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### (b) Plaintiff's Own Allegations Establish the Court Does Not Have General Jurisdiction over UAM

To establish "minimum contacts," a plaintiff must establish one of two types of personal jurisdiction—general and specific. General jurisdiction gives a court the right to hear any claims asserted against a defendant regardless of whether they arise from the defendant's contacts with the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction exists only if the defendant has "continuous and systematic" contacts with a state that are "sufficiently extensive and pervasive to approximate physical presence." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2011). General jurisdiction over a corporation typically only exists "in the state of the corporation's place of business and the state of its incorporation." *Kipp v. Ski Enter. Corp.*, 783 F.3d 695, 698 (7th Cir. 2015). Here, however, Plaintiff alleges UAM "is a limited liability company under the laws of the State of Delaware, with its principal place of business in Encino, California." SAC at ¶ 6. Thus, Plaintiff establishes that the Court does not have general jurisdiction over UAM.

### (c) Plaintiff Also Fails to Establish Specific Jurisdiction over UAM

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919. In other words, specific personal jurisdiction "requires that the defendant's contacts with the forum state relate to the challenged conduct." *Felland*, 682 F.3d at 673; *Tamburo*, 601 F.3d at 702 (specific jurisdiction requires, *inter alia*, that "the alleged injury arises out of the defendant's forum-related activities"). That is not the case here.

First, Plaintiff contends that the Invoice and Confirmation of Payment to Nagham's Limo "establishes grounds for personal jurisdiction against UAM." Plaintiff's Supp. (Doc. 53) at ¶ 15. But since UAM's payment defeats Plaintiff's claims that it was not paid for the rental of the Limo-Jet, Plaintiff also denies any affiliation with Nagham's Limo and denies being paid for the rental.

4

If, as Plaintiff contends, UAM's payment and rental have nothing to do with Plaintiff, then they also do not establish that Plaintiff's claims arise from UAM's rental and payment. In short, the Invoice and Confirmation of Payment does not establish specific jurisdiction over UAM.

That leaves Plaintiff with its conclusory allegations that Ramadan is UAM's agent. *See, e.g.*, SAC at ¶¶ 13, 29, 30. While a principal may become subject to personal jurisdiction through an agent's actions, Plaintiff bears the burden of pleading the existence of an agency relationship in support of its agency argument. *See Moore v. Charter Commc'ns, Inc.*, 523 F. Supp. 3d 1046, 1051, 1054 (N.D. Ill. 2020) (granting motion to dismiss for lack of jurisdiction where plaintiff failed to meet its burden of establishing a plausible agency relationship between defendant and an alleged agent); *Salon Grp., Inc. v. Salberg*, 156 F. Supp. 2d 872, 876-77 (N.D. Ill. 2001) (same); *Waldock v. M.J. Select Global, Ltd.*, No. 03 C 5293, 2005 WL 2737502 at *7 (N.D. Ill. Oct. 24, 2005). But conclusory allegations of agency "by a plaintiff are insufficient to support personal jurisdiction." *Wilson v. Nouvag GmbH*, No. 15-CV-11700, 2018 WL 1565602, at *6 (N.D. Ill. Mar. 30, 2018); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 17-CV-1216, 2018 WL 835222, at *4 (N.D. Ill. Feb. 13, 2018) (same).

Further, Plaintiff's factual allegations *negate* an agency relationship. Plaintiff alleges Ramadan is a "UAM artist[]," Ramadan is "an artist under [UAM's] labels," and the supposed agency relationship relates to "the recording of music and the marketing of music owned by UAM and performed by Ramadan." SAC at ¶¶ 10, 12, 83. But recording artists are not employees or agents of record companies and, instead, are independent contractors who undertake to deliver recordings of their performances. *See, e.g.*, *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 541 (D.N.J. 1999) (recording artist not an employee providing works for hire); H.W. KRASILOVSKY & SYDNEY SHEMEL, THIS BUSINESS OF MUSIC 185 ("[G]iven the absence of regular work hours, withholding

5

of taxes and social security, and other indications of a conventional employer-employee working relationship, the recording artist is likely to be considered an independent contractor") (10th Ed. 2007); California Entertainment Commission at 22 (May 23, 1985) ("A recording contract is not, in essence, a contract of employment. It is a contract to produce a permanent and rep[l]ayable showcase of the talents of the artists."; excluding procurement of recording contracts from regulated procurement of employment). As a result, Plaintiff's own allegations make an agency relationship implausible. *See, e.g.*, *Moore v. Charter Commc'ns, Inc.*, 523 F. Supp. 3d 1046 (N.D. Ill. 2020) (granting defendant's motion for lack of personal jurisdiction where plaintiff failed to allege a plausible agency relationship between defendant and alleged agent).

Since Plaintiff's agency allegation is implausible, it should be no surprise it also is untrue: Ramadan is not, and has never been, an agent of UAM. *See* Declaration of Joyce Slaiby at ¶ 3; *Matlin v. Spin Master Corp.*, 921 F.3d 701, 704 (7th Cir. 2019) (defendants' Rule 12(b)(2) dismissal affirmed where supported by their officers' declarations).

In addition to failing to plausibly allege an agency relationship, Plaintiff fails to allege that UAM itself committed any act establishing specific personal jurisdiction over it. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State."); *Calder v. Jones,* 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

Accordingly, UAM respectfully submits that its Rule 12(b)(2) Motion should be granted.

## 2. **ALTERNATIVELY, PLAINTIFF'S CLAIMS ALSO FAIL UNDER RULE 12(B)(6)**

### (a) **The Rule 12(b)(6) Standards**

Rule 12(b)(6) allows the Court to dismiss a pleading for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports,*

*LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, a court need not accept conclusory factual allegations and legal conclusions as true.  *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

The pleading requirements when a plaintiff alleges fraud are even more rigorous.  If a "claim rests on allegations of deceptive conduct, then Rule 9(b) applies, and the plaintiff must plead with particularity the circumstances constituting fraud....  Specifically, the complaint must identify the who, what, when, where, and how of the alleged fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (citation and internal quotation marks omitted).

Applying these standards, Plaintiff's claims against UAM fail as a matter of law.

### (b)    All of Plaintiff's Claims Fail Because They Rely on Plaintiff's Conclusory and Implausible Agency Allegations

Plaintiff alleges no wrongful conduct by UAM.  Instead, Plaintiff bases all its claims against UAM on alleged vicarious liability for Ramadan's supposed wrongs.  *See* SAC at ¶ 9 (breach of contract; "Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions"), ¶ 103 (negligence; "Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions"), ¶ 118 (fraud; "Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions"), and ¶ 114 (misappropriation; "Defendant UAM is therefore vicariously liable to MIK for Ramadan's actions").

But Plaintiff relies on its conclusory allegations that the recording artist Ramadan is an agent of the record company, UAM.  Time and time again, courts have held that conclusory allegations of agency are insufficient. *See, e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014) (granting motion to dismiss where plaintiffs' agency allegations

"were conclusory and Plaintiffs plead no facts to support it."); _Sefton v. Toyota Motor Sales U.S.A._, No. 09 C 3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010) (same).  Moreover, Plaintiff's own allegations that UAM is a record company and Ramadan a recording artist render Plaintiff's conclusory allegations of agency implausible.  _See above_ at 5-6.

Plaintiff does not allege that UAM had any interactions with Plaintiff whatsoever and, instead, all of the claims Plaintiff asserts against UAM rely entirely on vicarious liability premised on bare and implausible assertions of an agency relationship.  As in _Smith_ and _Sefton_, the Court should dismiss all of Plaintiff's claims against UAM for failure to state a claim.

### (c)    Each of Plaintiff's Claims against UAM Fails for Additional Reasons

### (1)    Plaintiff's Count V for Alleged Breach of Contract

In its Count V, Plaintiff alleges that "Ramadan entered into an agreement with MIK where MIK agreed to allow him to take video and photographs of the Limo-Jet in exchange for renting the Limo-Jet at a later date," and that "Ramadan breached the agreement by publishing the videos on YouTube as part of the video for the song 'Arabi.'"  SAC at ¶¶ 78 and 81.  As raised above, the claim fails against UAM because Plaintiff relies on conclusory and implausible agency allegations.

In addition, if Plaintiff tries to avoid dismissal for lack of personal jurisdiction by now claiming that the Invoice and Confirmation of Payment was in fact UAM's payment for rental of the Limo-Jet, then payment—established by Plaintiff's own filing in this case—defeats this claim.

In ruling on a motion to dismiss, "[a] court may, … look beyond the complaint to matters of public record, including court files and records," including "documents … essential to a plaintiff's claim" that are filed with the Court.  _Reuben v. U.S. Air_, 2012 WL 2302156, at *3 (W.D. Pa. June 18, 2012) (citation omitted); _see also Cortec Indus., Inc. v. Sum Holding L.P._, 949 F.2d 42, 47 (2d Cir. 1991) (under Rule 12(b)(6), courts may consider a document "integral to the complaint" even if the "plaintiff chooses not to attach [it] to the complaint or incorporate [it] by

reference"). Here, the Court may consider the Invoice and Confirmation of Payment because Plaintiff identified it as "form[ing] the basis of Plaintiff's claims" and stated it is "crucial to Plaintiff's claims against UAM…." ECF No. 53 at ¶ 15 and No. 53-1. Further, when a relevant document is before the court, that document controls if it conflicts with the complaint's allegations. *See, e.g.*, *Thompson v. Ill. Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

Here, the Invoice and Confirmation of Payment negates at least two necessary elements of Plaintiff's breach of contract claim, namely breach by allegedly not "renting the Limo-Jet at a later date" and failing to pay for the rental, and damages from the alleged non-payment. Accordingly, even if Plaintiff's bare assertion of agency are credited—and they should not be—Plaintiff defeats his breach of contract claim against UAM by filing the Invoice and Confirmation of Payment as the alleged support for that claim.

### (2) Plaintiff's Count VI for Negligence

In its Count VI, Plaintiff alleges that "Ramadan owed MIK a duty to exercise ordinary care in his use of the Limo-Jet" but "Ramadan breached that duty by damaging the Limo-Jet while, among other things, dancing on the vehicle." SAC at ¶¶ 93-94. That claim fails as to UAM because Plaintiff relies solely on supposed vicarious liability based on conclusory and implausible agency allegations. *See above* at 5-6. In addition, if Plaintiff tries to defeat UAM's challenge to personal jurisdiction by arguing the Invoice and Confirmation of Payment has nothing to do with Ramadan's rental of the Limo-Jet, then Plaintiff establishes that UAM—by paying that invoice—also had nothing to do with Ramadan's rental of the Limo-Jet and alleged damage to it.

Even if Plaintiff could surmount those hurdles, "[n]egligence claims for 'solely economic loss' are barred because they 'are best handled by contract, rather than tort.'" *Turner v. GAC Star Quality, LLC*, 671 F. Supp. 3d 897, 905 (N.D. Ill. 2023) (granting motion to dismiss negligence

claim as barred by economic loss rule); *see also Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1071 (C.D. Ill. 2016) (same); *Rudy v. D.F. Stauffer Biscuit Co., Inc.*, 666 F. Supp. 3d 706, 721 (N.D. Ill. 2023) (same). For that additional reason, this claim fails as to UAM.

### (3) Plaintiff's Count VII for Common Law Fraud

Plaintiff's Count VII alleges that, in April 2023, Ramadan falsely stated he would not publish images of the Limo-Jet without returning to rent it, would not damage it, and "he intended to provide opportunities for MIK to rent the Limo-Jet in California and Dubai." SAC at ¶¶ 32-33, 104-107. This claim against UAM fails at least in part because Plaintiff's filing of the May 2, 2023, Invoice and Confirmation of Payment establishes that the Limo-Jet was in fact rented.

Also, because Plaintiff bases its fraud claim on promises Ramadan allegedly made about the future, the claim is for so-called promissory fraud. *See, e.g.*, *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 919-20 (N.D. Ill. 2012). But that claim is not recognized in Illinois. *Desnick v. Am. Broad. Co., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) ("Illinois does not provide a remedy for fraudulent promises ('promissory fraud')"); *Ellis v. Allstate Ins. Co.*, 479 F. Supp. 2d 782, 790 (N.D. Ill. 2006) ("In Illinois, a false representation as to a matter of intention or future conduct is not fraud."); *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 682 (1989) ("[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud."). For that reason alone, Plaintiff fails to plead a claim for common law fraud.

In addition, a party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see, e.g.*, *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (affirming dismissal under Rule 9(b)) *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601 (7th Cir. 2005) (same). Conclusory allegations are

insufficient to satisfy Rule 9(b). *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989). "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (affirming dismissal under Rule 9(b)).

Here, for multiple reasons, Plaintiff fails to meet this heightened pleading requirement. First, Plaintiff sues UAM only on a vicarious liability theory and, while Plaintiff's agency allegations are insufficient, they are particularly insufficient as the basis of a fraud claim. *Lachmund v. ADM Inv. Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) (affirming dismissal of fraud claim where liability was based on inadequately pled agency relationship; "Rule 9(b) appl[ies] with equal force to the issue of agency and to the underlying fraud claim.").

Plaintiff also fails to plead any facts whatsoever, let alone plead them with particularity, to establish that Ramadan secretly intended that the Limo-Jet would not be rented, secretly intended to damage the Limo-Jet, and secretly intended not to let Plaintiff know of opportunities to rent the Limo-Jet in California and Dubai. The mere alleged failure to fulfill those supposed promises cannot support a fraud claim because then every breach of contract would also be a fraud claim by the simple expedient of a conclusory allegation of a secret intent not to perform. *Moreno v. Samuels*, No. 17 C 1711, 2019 WL 7291063, at *4 (N.D. Ill. Dec. 30, 2019) ("Promises that ultimately turn out to be untrue, however, do not establish that they were intentionally false at the time they were made, nor do they suggest any intention not to perform or intent to deceive.") (citing *Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1173 (10th Cir. 1993) ("Eventual failure to perform is not evidence of intent not to do so. Thus, an allegation that a defendant intended to deceive because the alleged promise was not met is insufficient as a matter of law.")).

Accordingly, Plaintiff's fraud claim against UAM also is properly dismissed.

11

### (4)    Plaintiff's Count VIII for Misappropriation

Finally, Plaintiff's Count VIII alleges that "Defendant Ramadan's use of the Limo-Jet in a music video to great commercial success for Defendant" without compensation to Plaintiff, and that UAM is supposedly vicariously liable for Ramadan's use.  SAC at ¶¶ 125-126, 133.  This claim fails because it again relies on conclusory and implausible agency allegations, and also because—if Plaintiff relies on the Invoice and Confirmation of Payment to support personal jurisdiction—Plaintiff received and accepted payment for the use.    In addition, the misappropriation claim fails because it is preempted by the Copyright Act.

### (i)    The Copyright Act's Test for Preemption

The Copyright Act explicitly preempts state laws that regulate in the area of copyright.  *See* 17 U.S.C. § 301(a) ("[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [17 U.S.C.] Section 106 . . . are governed exclusively by this title.").  Congress intended for Section 301 "to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection."  H. R. Rep. No. 94-1476, at 130 (1976).

A two-step test is applied to determine whether a state law claim is preempted.  "'First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in Section 102.  Second, the right must be equivalent to any of the rights specified in § 106.'"  *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1359 (N.D. Ill. 1994) (quoting *Baltimore Orioles v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986)).  A state law claim that is preempted by the Copyright Act is properly dismissed under Rule 12(b)(6).  *See, e.g.*, *Carter v. Pallante*, 256 F. Supp. 3d 791 (N.D. Ill. 2017) (granting defendants' motion to dismiss all state law claims as preempted by the Copyright Act).

12

Here, applying the test for Section 301 preemption compels the conclusion that Plaintiff's claim against UAM for misappropriation is preempted.

### (ii) The Limo-Jet Is Fixed in Tangible Form and Comes Within the Subject Matter of Section 102

The first step of the preemption test is satisfied because the Limo-Jet falls within the general subject matter of the Copyright Act, namely works "fixed in any tangible medium of expression …." 17 U.S.C. § 102(a). The fact that the Limo-Jet is not protected under the Copyright Act —as a jet fuselage modified to function as an automobile, it lacks non-functional original elements entitled to protection—does not change that it is within the general subject matter of copyright. That is so because "[o]ne function of § 301(a) is to prevent states from giving special protection to works of authorship that Congress has decided should be in the public domain, which it can accomplish only if 'subject matter of copyright' includes all works of a *type* covered by Sections 102 and 103, even if federal law does not afford protection to them." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996); *see also Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501 (7th Cir. 2011) ("[T]he Copyright Act can preempt state law even when the rights are claimed in uncopyrighted or uncopyrightable materials.").

Although the Limo-Jet is not copyrightable, it is fixed in tangible form and "within the general scope of copyright." 17 U.S.C. § 301(a). To hold otherwise would allow States to provide copyright-like protection to articles for which Congress chose not to provide copyright protection and, by doing so, frustrate Congress' intent to sweep broadly in preempting State law copyright-like claims. Accordingly, the first test for preemption is met.

13

### (iii) The Misappropriation Claim Is Equivalent to the Rights Specified Under <u>Section 106</u>

The second step of the preemption test is also satisfied because Plaintiff's misappropriation claim asserts rights that are equivalent to those protected by <u>Section 106</u> of the Copyright Act. A "state law right is considered 'equivalent' under the second prong," and therefore preempted, "if it is 'infringed by the mere act of reproduction, performance, distribution[,] or display.'" *Carter*, 256 F. Supp. 3d at 802 (quoting *Baltimore Orioles, Inc.*, 805 F.2d at 677); *see also* <u>1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 1.14[C] (2025)</u> (Because <u>Section 106</u> gives a copyright owner the exclusive "right to prohibit reproduction[,] performance, distribution[,] or display of [the] work, ... a right that is 'equivalent to copyright' is one that is infringed by the mere act of reproduction, performance, distribution, or display.")

Here, Plaintiff's misappropriation claim is expressly based on the alleged filming of the Limo-Jet (that is, reproducing it in film) and including it in the music video (that is, publicly displaying it). <u>SAC at ¶¶ 125-26</u>. Plaintiff's claimed exclusive right to reproduce and publicly display the Limo-Jet is equivalent to the rights provided by <u>Section 106</u>, and Plaintiff's claimed exclusive right to include images of the Limo-Jet in new works—the music video—is equivalent to <u>Section 106(2)</u>'s exclusive rights to create derivative works. Further, Plaintiff's claimed exclusive rights are not "qualitatively different from that proscribed by the Copyright Act." *Carter*, 256 F. Supp. 3d at 803.

Courts in the Northern District of Illinois repeatedly conclude that the Copyright Act preempts misappropriation claims that, as here, are based on the allegedly unauthorized distribution or exploitations of works that come within the subject matter of copyright as specified in <u>Section 102</u>. *See, e.g.*, *Morningware, Inc. v. Hearthware Home Products, Inc.*, No 09 C 4348, <u>2012 WL 3835825, at *9-10</u> (N.D. Ill. Sept. 4, 2012) (finding misappropriation claim as to

14

infomercial preempted because alleged conduct, "copying, or 'mimicking'" is "the crux of copyright infringement"); *Nash v. CBS, Inc.*, 704 F. Supp. 823, 833-35 (N.D. Ill. 1989) (state misappropriation claim for story about John Dillinger was preempted by Section 301), *aff'd*, 899 F.2d 1537 (7th Cir. 1990); *see also G.D. Searle & Co. v. Philips–Miller & Assocs., Inc.*, 836 F. Supp. 520, 524-26 (N.D.Ill.1993) (explaining "the weight of the authority favors preemption of misappropriation claims").

Accordingly, the second prong of the preemption test also is met and, for that additional and independent reason, Plaintiff's state law misappropriation claim is properly dismissed.

## **CONCLUSION**

For the foregoing reasons, UAM respectfully submits that its Motion should be granted and Plaintiff's claims against UAM dismissed, without leave to amend again.

Dated: June 20, 2025                                Respectfully Submitted,


By: _____
                       Peter Anderson
          Peter Anderson (*pro hac vice*)
            peteranderson@dwt.com
          Rachel R. Goldberg (State Bar No. 6317290)
            rachelgoldberg@dwt.com
          DAVIS WRIGHT TREMAINE LLP
          350 South Grand Avenue, 27th Floor
          Los Angeles, California 90071
          Telephone:  (213) 633-6800

          Attorneys for Defendants
          SARI ABBOUD and
          SALXCO UAM LLC, d/b/a UNIVERSAL
          ARABIC MUSIC