IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIK TRANSPORTATION, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 24 C 6543 |
| WILBURN HOLDING CO., INC., d/b/a Freebandz Entertainment, NAYVADIUS DeMUN CASH, f/k/a Nayvadius Demun Wilburn, MOHAMMED RAMADAN, SARI ABBOUD, and SALXCO UAM LLC, d/b/a Universal Arabic Music, | ) |
| Defendants. | ) |

## ORDER ON MOTIONS TO DISMISS BY DEFENDANTS ABBOUD AND UAM

On August 6, 2025, the Court heard oral argument on motions to dismiss plaintiff MIK Transportation, Inc.'s amended complaint that were filed by defendants Sari Abboud and Salxco UAM LLC, which does business as Universal Arabic Music (UAM). The Court made oral rulings—summarized below—on most of the arguments in the motion but took others under advisement. This order also includes the Court's rulings on the remaining arguments.

The Court adopts the following summary of the facts alleged in the complaint set out in its November 25, 2024 decision granting a motion to dismiss filed by a different defendant, Universal Music Group, Inc. (UMG):

> MIK's claims involve a vehicle called the "Limo-Jet," an automobile made from a jet fuselage. MIK has a registered trademark for the term Limo-Jet. Clients pay MIK to display the Limo-Jet at tradeshows and other events.

> The defendants in this case are Nayvadius DeMun Cash, a rapper and singer who uses the stage name "Future"; Wilburn Holding Co., an entity that owns the rights to Cash's music (Cash was formerly known as Nayvadius DeMun Wilburn); Mohammed Ramadan, an Egyptian singer and actor; Sari Abboud, a Lebanese-Canadian singer and songwriter; and UMG, a California corporation.
>
> MIK alleges that in April 2023, Ramadan and his associates contacted MIK to arrange to see the Limo-Jet. They discussed with MIK the possibility of using the Limo-Jet for various shows in California and Dubai. They also stated that Cash was interested in using the Limo-Jet in music videos. Ramadan and his associates arranged to take photographs and videos of the Limo-Jet to show to Cash and Wilburn Holding Co. They specifically agreed not to damage the Limo-Jet and agreed not to make public any photos or videos without MIK's express consent. The Limo-Jet was evidently located at a lot in Des Plaines, Illinois when Ramadan and his associates viewed it and took pictures. According to MIK, they damaged the vehicle by scuffing its custom paint job. After this MIK heard nothing more from Ramadan. In February 2024, however, MIK discovered on YouTube footage of the Limo-Jet from the videos Ramadan and his people had taken, in a music video for a song called "Arabi" that featured Ramadan, Abboud, and Cash. As of the date of the complaint's filing, the video had over 51 million views.
>
> MIK is a Minnesota-based corporation, and none of the defendants are Illinois citizens. The principal, and perhaps the only, contact with Illinois asserted by MIK involves the April 2023 visit by Ramadan and his associates to Des Plaines and their related representations and agreements allegedly made here.

*MIK Transp., Inc. v. Freebandz Productions LLC*, No. 24 C 6453, 2024 WL 4882129, at *1 (N.D. Ill. Nov. 25, 2024). MIK added UAM as a defendant via its second amended complaint.

MIK asserts claims against UAM for breach of contract (Count 5), negligence (Count 6), fraud (Count 7), and misappropriation (Count 8), and against Abboud for misappropriation (Count 11).

1. **UAM motion to dismiss**

UAM moved to dismiss MIK's second amended complaint for lack of personal jurisdiction and for failure to state a claim. The latter aspect of its motion is premised on multiple grounds, including lack of personal jurisdiction; preemption by virtue of the

federal Copyright Act; the claimed implausibility of MIK's allegations that Abboud acted as UAM's agent, and other arguments that the Court addressed in its oral ruling and will summarize below.

    a.    **Personal jurisdiction**

MIK alleges in its second amended complaint that defendant Ramadan (who has not yet been served with process), an Egyptian national, was promoted by UAM as an artist under its record labels, "which included partnering with him to release music recorded to Ramadan and owned by UAM." 2d Am. Compl. ¶ 12. As it relates to the present motion in particular, MIK alleges that Ramadan, "acting as an agent under the direction and control of UAM, and the supervision of Abboud [an employee and officer of UAM], was responsible for securing footage to be used in music videos for the music recorded by Ramadan and owned by [ ] UAM." *Id.* ¶ 13. Making such videos, MIK alleges, was a source of revenue generation for both UAM and Ramadan. *Id.* ¶¶ 14-15. According to MIK, in April 2023, Ramadan contacted MIK's agent to arrange to see the Limo-Jet at Jidd Motors in Des Plaines, Illinois and discussed the possibility of using the Limo-Jet for various shows and in music videos by defendant Nayvadius Cash. *Id.* ¶¶ 25-27. MIK alleges that "UAM hired and paid for transportation and bodyguards to accompany its agent, Ramadan, to Jidd Motors to secure footage of the Limo Jet, and at all times relevant exercised control over his activities." *Id.* ¶ 29. Ramadan—again, allegedly, acting as an agent of UAM—made arrangements to see and photograph the Limo-Jet and "specifically agreed that they would not public any videos or photographs without MIK's express consent." *Id.* ¶¶ 30-32. But later, MIK discovered video footage of the Limo-Jet on YouTube, as part of a music video featuring Ramadan, Cash, and

3

defendant Sari Abboud, for a song called "Arabi." *Id.* ¶¶ 39-42. MIK also discovered photographs of the Limo-Jet on Ramadan's social media accounts. 2d Am. Compl. ¶ 46.

MIK's contention that the Court has personal jurisdiction over UAM is premised on MIK's allegations that Ramadan was acting as UAM's agent in reaching out to Illinois, coming here, and performing acts here that are part of the alleged tortious conduct and contractual breach. *See, e.g., Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) (contacts of defendant's agent may be attributed to defendant for purposes of specific personal jurisdiction).

In support of its motion to dismiss, UAM submitted an affidavit from its chief financial officer, who states in conclusory terms that Ramadan "is not, and has never been, an officer, employee, agent, owner or co-owner of UAM." Dkt. no. 63-1 ¶ 3. MIK, however, has submitted documentation that it contends shows that UAM hired for and paid for transportation and bodyguards to accompany Ramadan to Jidd Motors when he caused the photographs and videos of the Limo-Jet to be taken. *See* 2d Am. Compl. ¶ 29; *see also* dkt. no. 53-1. Factual conflicts in evidentiary materials are resolved in the plaintiff's favor on a motion to dismiss for lack of personal jurisdiction. *See, e.g., Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). MIK's allegations, which are supported by this documentation, are sufficient at the present stage of the case to support its contention that Ramadan's contacts with (and footfall in) Illinois are attributable to UAM for purposes of personal jurisdiction. The Court denies UAM's Rule 12(b)(2) motion for this reason.

### b. Preemption under Copyright Act

The Copyright Act preempts state-law claims "that are equivalent to any of the exclusive rights within the general copy of copyright as specified by [17 U.S.C.] Section 106 . . . ." 17 U.S.C. § 301(a). A state-law claim is preempted if both elements of a two-part exist: "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in [17 U.S.C.] § 102. Second, the right must be equivalent to any of the rights specified in [17 U.S.C.] §106." *Baltimore Orioles v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). In the Court's August 6 oral ruling, it concluded that—at least for purposes of a motion to dismiss for failure to state a claim—the preemption test is not satisfied in a situation involving, as here, a defendant taking and using, without authorization, images of a non-copyrightable object for personal gain.

### c. UAM's remaining arguments

The Court, in its oral ruling, overruled several of UAM's claim-specific arguments for dismissal. First, the Court disagreed with UAM's contention that MIK's allegation that UAM paid for *security and transportation for Ramadan* contradicts MIK's contention that the defendants did not pay for or obtain the rights to reproduce or publish photos and videos of the Limo-Jet. *See generally* 2d Am. Compl., Count 5 ¶¶ 78-79. That's an apples-to-oranges comparison on UAM's part.

Second, the Court overruled UAM's request to dismiss MIK's negligence claim on the basis that it seeks economic damages that are not recoverable under the "economic loss" doctrine set out in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). MIK's negligence claim seeks recovery for property damage

and lost income arising from the property damage, not economic losses within the meaning of *Moorman.*

Third, the Court overruled UAM's argument for dismissal of MIK's fraud claim on the basis that it involves only a non-actionable statement about future conduct. A false promise or representation that is the means by which a party attempts to accomplish a fraud is actionable. *See generally Steinberg v. Chi. Med. Sch.*, 69 Ill. 2d 320, 334, 371 N.E.2d 634, 641 (1977). MIK alleges that Ramadan, acting as UAM's agent, effectively lied his way into a session with the Limo-Jet by representing that he was photographing and video-recording it to make a determination about whether to enter into an agreement with MIK to display videos and images of the Limo-Jet, while intending all along to simply publish the supposedly preliminary images and never pay for the right to do so. This is sufficient to survive a motion to dismiss. In addition, MIK has alleged the circumstances of the fraud sufficiently to comply with the particularity-in-pleading requirement imposed by Federal Rule of Civil Procedure 9(b).

Finally, the Court concludes that MIK's allegations that Ramadan was acting as UAM's agent are sufficient to plausibly allege agency. This is particularly so when one considers the fact that the claim of agency is supported by MIK's allegations that UAM paid for Ramadan's transportation and security in connection with the visit to Jidd Motors where the videos and photographs were taken. MIK ultimately may fall short of establishing agency by a preponderance of the evidence, but that is an issue for another day. Its allegations are sufficient to survive a motion to dismiss for failure to state a claim.

For all of these reasons, the Court denies UAM's motion to dismiss.

**2.      Abboud motion to dismiss**

Abboud's motion to dismiss asserts the same preemption argument that the Court addressed in connection with UAM's motion.  The Court has denied Abboud's motion for the same reasons it denied UAM's motion.

## Conclusion

For the reasons stated above, the Court denies the motions to dismiss filed by defendants Abboud [dkt. no. 49] and Salxco UAM, LLC [dkt. no. 63].  Those defendants' answers to the second amended complaint are to be filed by September 16, 2025.  The rest of the discovery and pretrial schedule previously set by the Court remains as-is.

Date:  August 31, 2025

_____
MATTHEW F. KENNELLY
United States District Judge